IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD RICHARDS | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14-cv-04347 |
| | ) |
| CITY OF CHICAGO, a municipal corporation, | ) ) |
| | ) Jury Trial Demand |
| Defendant. | ) |

## COMPLAINT

Plaintiff, EDWARD RICHARDS ("Plaintiff"), by and through his attorney, Daniel Q. Herbert, of the Law Offices of Daniel Q. Herbert and Associates, makes the following complaint against Defendant, the City of Chicago ("City") and states as follows:

## INTRODUCTION

1. Plaintiff asserts an employment retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and Plaintiff additionally asserts a 42 U.S.C. Section 1983 claim to redress the deprivation under color of law of Plaintiff's First Amendment rights as secured by the United States Constitution.

## JURISDICTION AND VENUE

2. Jurisdiction over Plaintiff's Title VII and First Amendment claims are conferred by 28 U.S.C. §1331.

3. Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. §1391 because all parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred in this district.

1

4. All conditions precedent to filing suit have been met. Plaintiff timely filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), as required by Section 42 U.S.C. §2000e-5(e)(1) on July 23, 2012. (Attached here as Exhibit A).

5. Exhibit A is a true and accurate copy of Plaintiff's charge of discrimination.

6. The United States Equal Employment Opportunity Commission issued a "right to sue letter" dated March 14, 2014. (Attached as Exhibit B).

7. Exhibit B is a true and accurate copy of the right to sue letter.

## PARTIES

8. At all times relevant to this complaint, the Defendant City of Chicago is a municipal corporation that has employed at least 15 employees in the State of Illinois and is an employer as defined by 42 U.S.C. §2000e(b).

9. At all times relevant to this complaint, Plaintiff was an employee as defined under 42 U.S.C. §2000e.

10. Plaintiff was employed by the Chicago Police Department from November 18, 1985 until being relieved of his police powers on February 22, 2014.

## FACTS

11. Plaintiff was hired as a Chicago Police Officer on November 18, 1985.

12. Plaintiff was promoted to the rank of Lieutenant on February 16, 2007.

13. Shortly after promotion to Lieutenant, beginning in 2008 and continuing through 2013, Plaintiff engaged in statutorily protected activity by filing various charges with the IDHR, the EEOC, the City of Chicago Inspector General, and Chicago Police Department's Internal Affairs Division.

14. Plaintiff complained in an IDHR or EEOC complaint for each separate charge of discrimination or retaliation directed against him.

15. Plaintiff engaged in statutorily protected activity by filing an ADEA age complaint IDHR No. 2009CN4676, related to Chicago Police Department ("CPD") carbine training, on October 20, 2008.

16. Plaintiff engaged in statutorily protected activity by filing a retaliation complaint, IDHR No. 2009CN4677, for being denied promotion to the rank of Captain, on April 10, 2009.

17. Plaintiff engaged in statutorily protected activity by filing harassment and retaliation complaint, IDHR No. 2011CF2898, related to Plaintiff filing previous complaints with the IDHR.

18. Plaintiff engaged in statutorily protected activity by filing harassment and retaliation complaint, IDHR No. 2012CF4036, related to Plaintiff filing previous complaints with the IDHR.

19. Plaintiff engaged in statutorily protected activity by filing an ADEA age complaint, IDHR No. 2012CA2297, related to a change in CPD policy that affected Lieutenants' pay.

20. Plaintiff engaged in statutorily protected activity by filing a racial discrimination complaint, IDHR No. 2012CA1787.

21. On September 22, 2012, Plaintiff discovered the CPD Elearning certification process that qualified officers as trained in the use of the CPD's marijuana field test kit was not valid.

22. Plaintiff achieved a failing grade on the field kit testing, however the CPD system listed Plaintiff as certified to use the marijuana field test kit.

23. In spite of the failing grade, the CPD system allowed Plaintiff to print out a formal certification that Plaintiff had passed the testing and was certified.

24. Plaintiff subsequently notified the Elearning section of the Chicago Police Department via email about the validity issue with the cannabis field test.

25. On January 2, 2013, as required as a Chicago Police Officer, Plaintiff formally reported the validity issue with the marijuana field test to Sergeant Blaul of the Chicago Police Department's Internal Affairs Division.

26. On January 2, 2013, Plaintiff acted as a private citizen, spoke on a matter of public concern, and engaged in statutorily protected speech, when Plaintiff emailed his concerns about the validity issue with the marijuana field test to the City of Chicago Inspector General.

27. On November 14, 2012, Plaintiff was notified to appear as a witness in a federal discrimination lawsuit regarding Chicago Police Officer Alvin Campbell.

28. Plaintiff later engaged in statutorily protected speech by providing a witness deposition for Officer Campbell.

29. As a direct and proximate result of Plaintiff's statutorily protected activities, Plaintiff was subjected to a pattern of ongoing harassment and retaliation by Defendant which included retaliatory denial of promotion, retaliatory denial of training and material adverse job actions leading to Plaintiff's separation from the CPD.

### COUNT I – Retaliation Claim
**(Violation of Title VII - 42 U.S.C. § 2000e-3 (a))**

30. All preceding Paragraphs are incorporated herein.

31. Defendant changed the terms and conditions of Plaintiff's employment and committed an unlawful employment practice by subjecting Plaintiff to retaliatory denial of promotion, retaliatory denial of training, and material adverse job actions.

32. In 2009, Plaintiff was qualified and applied for promotion to the rank of Captain.

33. On March 5, 2009 in retaliation for engaging in statutorily protected activities Plaintiff was not selected for pre-service Captain training.

34. Plaintiff was eligible and qualified to apply to join FBI Squad U-2 TFO position.

35. On August 25, 2009, Plaintiff applied to join FBI Squad U-2.

36. On September 9, 2009, in retaliation for engaging in statutorily protected activities, Deputy Chief Dugan disapproved Plaintiff's request to join FBI Squad U-2 in writing, and as pretext incorrectly stated that the TFO position was reserved for officers below the rank of Lieutenant.

37. Despite being eligible and qualified, in retaliation for engaging in statutorily protected activities, Plaintiff was continuously denied a training opportunity, in that his 2009, 2010, 2011, and 2012 requests to attend the FBI National Academy were all denied.

38. Despite being eligible and qualified, in retaliation for engaging in statutorily protected activities, Plaintiff was denied a training opportunity, in that his 2010 and 2012 requests to attend the Police Executive Research Forum were denied.

39. On October 26, 2011, Plaintiff attended an IDHR fact finding conference related to Plaintiff's previously filed IDHR complaint No. 2011CF2898, that alleged harassment and retaliation for Plaintiff having filed previous complaints with the IDHR.

40. Plaintiff acted as a private citizen, spoke on a matter of public concern, and engaged in statutorily protected speech when he attended the October 26, 2011 IDHR fact finding conference.

41. CPD Sergeant Jeffrey Fronczak attended the October 26, 2011 IDHR fact finding conference as a witness for the CPD in his capacity as a Sergeant with the Office of Labor Affairs ("OLA").

5

42. Nine days later, on November 4, 2011, Plaintiff was notified by Sgt. Timothy Moore of the Internal Affairs Division that Sergeant Jeffrey Fronczak had initiated an internal complaint, Complaint Register No. 1049636, against Plaintiff alleging that Plaintiff submitted a sworn complaint (2011CF2898) to the IDHR knowing the information contained therein to be false. See Exhibit C.

43. Exhibit C is a true and accurate copy of the November 4, 2011, notification of charges.

44. On November 28, 2012, Plaintiff provided a statement to IAD Sgt. Timothy Moore related to Complaint Register No. 1049636 that was initiated by Sgt. Jeffery Fronczak. See Exhibit D.

45. Exhibit D is a true and accurate copy of Plaintiff's November 28, 2012 statement to Sgt Moore.

46. One year later, on November 1, 2013, Plaintiff was notified by Sgt. Timothy Moore that Sgt. Moore was now alleging that Plaintiff provided a false statement during his November 28, 2012 IAD interview with Sgt. Moore in that, Plaintiff stated "That was the first time I had met Investigator Williams and that was my first opportunity to clear it up." See Exhibit E.

47. Exhibit E is a true and accurate copy of the November 1, 2013, notification of charges.

48. On January 27, 2014, the Superintendent of Police served Plaintiff with a Suspension Notification informing Plaintiff that he was suspended for 30 days effective February 22, 2014 and that the Superintendent would file charges with the Chicago Police Board seeking Plaintiff's separation. See Exhibit F.

49. Exhibit F is a true and accurate copy of the Suspension Notification.

50. On February 5, 2014, Plaintiff received notice of Police Board charges filed by the Superintendent seeking Plaintiff's separation from the CPD. See Exhibit G

51. Exhibit G is a true and accurate copy of the notice of Police Board charges.

52. Both Plaintiff's suspension and the Police Board charges seeking Plaintiff's separation from the CPD, are based on Plaintiff's actions related to filing to IDHR complaint No. 2011CF2898, that alleged harassment and retaliation for Plaintiff's filing of previous complaints with the IDHR.

53. As a direct and proximate result of the above listed Defendant's violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, lost career opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT II – First Amendment Free Speech Claim
**(Violation of 42 U.S.C. §1983)**

54. All preceding Paragraphs are incorporated herein.

55. All of Plaintiff's EEOC, IDHR, and Inspector General complaints were speech protected by the First Amendment to the U.S. Constitution.

56. At all times, Plaintiff's EEOC, IDHR, and Inspector General complaints were speech of a private citizen on a matter of public concern.

57. Plaintiff's free speech right to avail himself of EEOC, IDHR, and Inspector General complaints outweighed any interest of the Defendants in suppressing Plaintiff's speech.

58. Defendants violated Plaintiff's right to free speech by subjecting Plaintiff to a pattern of continued harassment and retaliation including retaliatory denial of promotion, retaliatory denial of training, and material adverse job actions.

59. Defendant subjected Plaintiff to material adverse job action, including internal investigation, suspension, and effective termination from employment, as a direct result of Plaintiff exercising his constitutional free speech by participating in an IDHR fact finding conference on November 28, 2012.

60. Defendants acted intentionally and with callous disregard for Plaintiff's clearly established constitutional rights.

61. As a direct and proximate result of the Defendant's violations of 42 U.S.C. Section 1983 and Plaintiff's constitutional right to free speech as secured by the First Amendment, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, lost career opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendant City and that Plaintiff be awarded:

a) An order awarding Plaintiff back pay (including interest and benefits);

b) An order awarding Plaintiff compensatory and punitive damages in an amount to be determined at trial ;

c) An order awarding Plaintiff his costs, including reasonable attorneys' fees;

d) Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

                                                 Respectfully submitted,

Dated: June 11, 2014

                                                 _/s/Daniel Q. Herbert_____
                                                 Daniel Q. Herbert
                                                 Plaintiffs' Attorney

The Law Offices of Daniel Q. Herbert & Associates
206 S. Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
ARDC #6273940